IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

|  |  |  |
|---|---|---|
| ZEAL GLOBAL SERVICES PRIVATE LIMITED, | : | |
| | : | |
| Plaintiff, | : | |
| | : | CIVIL ACTION NO. |
| v. | : | 1:20-cv-00908-AT |
| | : | |
| SUNTRUST BANK and WELLS FARGO BANK, NATIONAL ASSOCIATION (INC.), | : | |
| | : | |
| Defendants. | : | |

**OPINION AND ORDER**

This is a case of bank fraud, in which nefarious scammers, masquerading as legitimate business representatives, directed Plaintiff Zeal Global Services Private Limited ("Zeal") to transmit funds to their bank accounts via wire transfers. Zeal brings claims against SunTrust Bank ("SunTrust") and Wells Fargo Bank, National Association (Inc.) ("Wells Fargo") (collectively, "Defendants" or "the Banks"), alleging that the Banks violated various state laws when they knowingly allowed the fraudsters to bank with them and did not close their accounts despite being aware of their fraudulent activities. Defendants have filed Motions to Dismiss [Docs. 27, 29], which are now before the Court. For the reasons below, the Court **GRANTS** Defendants' Motions. Zeal's Amended Complaint [Doc. 23] is **DISMISSED WITH PREJUDICE**.

## I.   BACKGROUND[1]

Zeal is a private company based in India that provides cargo marketing, management, and administrative services to partner airlines and terminal operators across the globe. (Amended Complaint, "Compl.," Doc. 23, ¶¶ 1, 5.) In furtherance of its business, Zeal maintains a long-standing relationship with the airline Compania Panamena de Aviacion, S.A. ("COPA"). (*Id.* ¶ 6.) Zeal books cargo from India to various destinations through COPA; in turn, COPA sends Zeal monthly invoices for its services. (*Id.* ¶ 7.) Zeal pays these invoices via wire transfers, the instructions for which are typically emailed to Zeal by a representative of COPA. (*Id.* ¶¶ 7, 8.) In early 2018, fraudsters pretending to be COPA representatives sent Zeal emails providing new wire transfer instructions for the payments of Zeal's monthly invoices. (*Id.* ¶¶ 9, 16, 23.)

Based on these emails, Zeal initiated three separate wire transfers, described in greater detail below. (*Id.* ¶¶ 10, 17, 24.) Zeal initiated these three transfers via payment orders that identified COPA as the named beneficiary but listed the beneficiary account numbers provided in the fraudulent emails. (*Id.* ¶¶ 11, 18, 25.) SunTrust and Wells Fargo were identified in the payment orders as the beneficiaries' banks and, accordingly, were tasked with accepting the funds on behalf of the beneficiaries, their customers. *See* O.C.G.A. § 11-4A-104 (explaining that a funds transfer is a series of transactions, beginning with the sender's

---

[1] The Court derives the factual background herein from Plaintiff's Amended Complaint, which the Court presumes true for purposes of resolving Defendants' Motions to Dismiss. *See Duke v. Cleland*, 5 F.3d, 1399, 1402 (11th Cir. 1993).

payment order, made for purpose of making payment to beneficiary of the order, and completed by acceptance of the payment order by the beneficiary's bank for the benefit of the beneficiary). Thus, Zeal was not a customer of either SunTrust or Wells Fargo, but because the fraudsters were customers of the Banks, the Banks were involved in accepting the payment orders and thereby completing the wire transfers.

**The Three Wire Transfers**

The first incident occurred on January 9, 2018, when Zeal received an email purportedly from E. Chavarria, a COPA representative, directing Zeal to wire funds to pay its monthly invoice to a new account, a SunTrust account in Spartanburg, South Carolina. (*Id.* ¶ 9.) On January 23, 2018, Zeal initiated a transfer of $268,887.87 to this account ("the First Account"). (*Id.* ¶ 10.)

On February 8, 2018, the fraudsters struck again. Zeal received another email purportedly from E. Chavarria (the COPA representative) instructing Zeal to change the wire transfer instructions, this time to deposit funds into a Wells Fargo account in Atlanta, Georgia. (*Id.* ¶16.) On February 26, Zeal transmitted a payment of $178,341.99 to that account (the Second Account). (*Id.* ¶ 17.)

Finally, on March 19, 2018, Zeal received a third email from "Mr. Chavarria" directing Zeal to wire payment of its monthly invoice to a different Wells Fargo account, also located in Atlanta. (*Id.* ¶ 23.) Zeal initiated a wire transfer of $293,362.40 to this Third Account on March 23, 2018. (*Id.* ¶ 24.)

**The Receiving Accounts**

As noted above, on all three wire transfers, Zeal identified the beneficiary of the payment as COPA Airlines. (*Id*. ¶¶ 11, 18, 25.) None of the accounts that received these three wire transfers were in the name of COPA Airlines. (*Id*. ¶¶ 12, 19, 26.) The Amended Complaint does not identify the name on the First Account, however, the names on the Second and Third Accounts were M. Unegbu and Olanrewaju Tijani, respectively. (*Id*.)

As to the First Account (the SunTrust account), Zeal alleges that, in the months preceding the first wire transfer, the account was never above $1,000 except for a single transfer of $16,900 that was immediately withdrawn upon deposit. (*Id*. ¶ 14.) Similarly, after Zeal sent payment of $ 268,887.87 to the First Account on January 23, 2018, the account holder immediately depleted the funds and closed the account. (*Id*. ¶ 15.)

The Second Account (the first Wells Fargo account) was opened approximately one month before the second wire transfer, and the signature card identified the purpose of the account as "Personal/ Household income." (*Id*. ¶ 19.) Zeal initiated the wire transfer to the Second Account on February 26, 2018; two date later, Wells Fargo placed a "hard hold" on the account. (*Id*. ¶ 20). However, this "hard hold" occurred only after the account holder (M. Unegbu) depleted the majority of the funds from the account, and no portion of the second wire transfer was recovered. (*Id*. ¶¶ 20-22.)

As with the Second Account, the signature card for the Third Account stated that it was a "Personal/ Household" account; further, Olanrewaju Tijani, the named account holder, was identified as a "Personal Trainer." (*Id.* ¶ 26.) With respect to this Third Account, Zeal alleges that before it initiated the third wire transfer (on March 23, 2018), Wells Fargo was informed by a noncustomer (on March 8, 2018) that her/ his company was instructed by fraudulent email to wire funds for a business purchase to the Third Account. (*Id.* ¶ 27.) Wells Fargo reviewed this fraud complaint from the noncustomer but did not close the Third Account or take further action at that time. (*Id.* ¶ 28.)

Then, on April 11, 2019, a few weeks after Zeal initiated the third wire transfer, Wells Fargo alerted COPA that it had been the target of fraud and instructed COPA to direct Zeal to recall the third wire. (*Id.* ¶ 29.) The next day, on April 12, a COPA executive advised Zeal of the fraud and the need to recall the third wire transfer. (*Id.* ¶ 30.) Two days later, on April 14, 2018, Wells Fargo sent Zeal's bank, HDFC Bank Limited ("HDFC"), a request to confirm that the third wire was legitimate. (*Id.* ¶ 31.) Days after that, on April 17 or 18, Zeal informed HDFC of the fraud and instructed it to recall the third wire. (*Id.* ¶ 32.) At some point before Zeal instructed its bank to recall the third wire, Wells Fargo placed a "hard hold" on the Third Account, preventing the account holder from withdrawing a portion of the funds. (*Id.* ¶ 33.) Ultimately, Wells Fargo was able to recover $179,447.88 of the total $293,362.30 of the third wire. (*Id.* ¶ 34.)

**Zeal's Allegations**

Zeal alleges that prior to the initiation of the three wire transfers, SunTrust and Wells Fargo knew that the three accounts were being used to defraud noncustomers and knew that the funds in the accounts were obtained by fraudulent activity, yet they "tacitly allowed" the holders of the three accounts to continue perpetrating fraud. (*Id*. ¶¶ 13, 43, 44, 49, 50.) By "tacitly permitting" the account holders to perpetrate fraud, and by failing to close their accounts, Zeal alleges that SunTrust and Wells Fargo became knowing members of a conspiracy with the account holders. (*Id*. ¶¶ 44, 51.) Accordingly, Zeal now brings claims against the Banks for (1) fraud; (2) conversion; (3) negligence; (4) money had and received; (5) tortious interference with business and contractual relations; (6) punitive damages; and (7) attorney's fees. Zeal does not bring any claims under Article 4A of the Uniform Commercial Code ("U.C.C.").

Zeal originally filed this action in the Superior Court of Gwinnett County on January 23, 2020. (Doc. 1 ¶ 1, Ex. A.) On February 27, 2020, Defendants removed this action under 28 U.S.C. § 1332 based on diversity of citizenship. (Doc. 1.) SunTrust and Wells Fargo filed their first set of Motions to Dismiss on March 2, 2020. (Docs. 5, 9.) Plaintiff then filed an Amended Complaint on March 23, 2020 (Doc. 23) and Defendants withdrew their first Motions as moot. (Docs. 31, 32.) Since then, Defendants have filed new Motions to Dismiss the Amended Complaint (Docs. 27, 29), which, after full briefing, are currently before the Court.

## II.   LEGAL STANDARD

To survive a motion to dismiss under Rule 12(b)(6), "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).   For the purposes of a motion to dismiss, the court must accept all factual allegations in the complaint as true; however, the court is not bound to accept as true a legal conclusion couched as a factual allegation. *Twombly*, 550 U.S. at 555.   "While legal conclusions can provide the framework of a complaint, they must be supported by factual allegations."   *Iqbal*, 556 U.S. at 679.   Although the plaintiff is not required to provide "detailed factual allegations" to survive dismissal, "threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Twombly*, 550 U.S. at 555, 570; *Iqbal*, 556 U.S. at 678.

## III.   DISCUSSION

### A.   U.C.C. Preemption

In arguing for dismissal of Zeal's claims, the Banks argue first and foremost that the U.C.C. preempts all of Plaintiff's common law claims because Article 4A of the Georgia U.C.C. provides the "exclusive means of determining the rights, duties, and liabilities" arising out of commercial wire transfers. (SunTrust Motion to Dismiss ("MTD"), Doc. 27-1 at 6; Wells Fargo MTD, Doc. 29-1 at 8) (citing O.C.G.A § 11-4A-102, cmt.) In response, Zeal argues that its claims are not preempted by Article 4A of Georgia's U.C.C. because (1) its claims are based on Defendants'

conduct "prior or subsequent to the funds transfer process" and (2) Article 4A is "silent as to claims based on a theory that the beneficiary bank accepted funds when it knew or should have known that the funds were fraudulently obtained." (Pl. Resp. to Wells Fargo, Doc. 34 at 9; Pl. Resp. to SunTrust, Doc. 33 at 7.)

Article 4A of Georgia's U.C.C. provides direction for a situation, such as here, where a bank receives a payment order that identifies the beneficiary of the funds by both name and account number, but the name and account number do not match:

> (b) If a payment order received by the beneficiary's bank identifies the beneficiary both by name and by an identifying or bank account number and the name and number identify different persons, the following rules apply:
>
> (1) Except as otherwise provided in subsection (c)[2], **if the beneficiary's bank does not know that the name and number refer to different persons, it may rely on the number as the proper identification of the beneficiary of the order**. The beneficiary's bank need not determine whether the name and number refer to the same person.

O.C.G.A. § 11-4A-207. (emphasis added).

Facially, the text of Article 4A applies squarely to the situation at hand. O.C.G.A. § 11-4A-207, cmt. 2 (identifying fraud as an example of an issue arising under subsection (b)(1)). Zeal initiated payment orders that identified the beneficiary as COPA Airlines (Compl. ¶¶ 11, 18, 25), but COPA was not the name on any of the three beneficiary accounts (*id*. ¶¶ 12, 19, 26). The Banks then accepted

---

[2] Subsection (c) is not relevant to the issues presented here, as it involves discussion of who bears the loss between the originator (here, Zeal) and the originator's bank (here, HDFC). O.C.G.A. § 11-4A-207, cmt. 3.

the funds based on the account number as the proper identification of the beneficiary of the order, in compliance with the directives of Article 4A. *See*, O.C.G.A. § 11-4A-207. As Defendants correctly point out, Zeal does not allege that the Banks "actually knew, at the time of the transfer[s], that the name on the transfer[s] did not correspond with the account numbers." (Wells Fargo MTD at 12.) Further, the U.C.C. imposes no duty on a bank to *determine* whether the name and number on an account match. O.C.G.A. § 11-4A-207(b)(1).

This is because "[a] very large percentage of payment orders issued to the beneficiary's bank by another bank are processed by automated means using machines capable of reading orders on standard format." O.C.G.A. § 11-4A-207, cmt. 2. Further, the "processing of the order by the beneficiary's bank and the crediting of the beneficiary's account are done by use of the identifying or bank account number without human reading of the payment order itself." *Id*. For this reason, the U.C.C. does not impose a duty on banks to determine whether the name and number on the beneficiary account match: if such a duty were imposed, "the benefits of automated payment are lost. Manual handling of payment orders is both expensive and subject to human error." *Id*.

Courts have widely and routinely found that the U.C.C. preempts common law claims arising out of wire transfers, especially in cases involving a name-account number mismatch. *Peter E. Shapiro, P.A., v. Wells Fargo Bank N.A.*, 795 App'x 741, 751 (11th Cir. 2019) (holding that plaintiff's negligence claim based on erroneous wire transfer to fraudster was preempted) ("Article 4A specifically (and

thus exclusively) defines the duties, rights, and liabilities of the parties in the misdescription-of-beneficiary situation presented by this case."); *Grain Traders, Inc. v. Citibank, N.A.*, 160 F.3d 97, 100 (2d Cir. 1998)[3] (holding that the U.C.C. precluded common law claims of conversion and money had and received because the liability sought to be imposed by plaintiff's common law claims "would be inconsistent with the provisions of Article 4A"); *Ma. v. Merill Lynch, Pierce, Fenner & Smith, Inc.*, 597 F.3d 84, 90 (2d Cir. 2010) (finding that plaintiff's claims for conversion and breach of fiduciary duty were preempted by the U.C.C.); *Capten Trading Ltd. v. Banco Santander International*, 2018 WL 1558272, at *3 (S.D. Fla. Mar. 29, 2018) (finding that plaintiff's common law claims for negligence, breach of contract, and breach of fiduciary duty were based on fraudulent wire transfers and were therefore preempted by 4A) ("The uniformity and certainty sought by the statute for these transactions could not possibly exist if parties could opt to sue by way of pre-Code remedies where the statute has specifically defined the duties, rights and liabilities of the parties.") (quoting *Corfan Banco Asuncion Paraguay v. Ocean Bank*, 715 So. 2d. 967, 971 (Fla. 3d DCA 1998)); *Alt. Energy Grp., Ltd. v. Ne. Direct Corp.*, 53 F.Supp. 3d 810, 814 (D.S.C. 2014) (finding that plaintiff's negligence and breach of fiduciary duty claims were preempted by the U.C.C.).

---

[3] Because all fifty states have adopted the U.C.C., "decisions from other jurisdictions interpreting the same uniform statute are instructive." *In re Pillowtex, Inc.*, 349 F.3d 711, n. 8 (3d Cir. 2003); *In re QDS Components, Inc.*, 292 B.R. 313, n. 3 (W.D. Ohio Oct. 1, 2002) ("Because the U.C.C. is a uniform law, decisions from other state and federal courts [interpreting the U.C.C.] also may be considered."); *In re Grubbs Cont. Co.*, 319 B.R. 698, 712 (M.D. Fla. Jan. 7, 2005).

As noted above, however, Zeal contends that because its claims are based on conduct *before* and *after* the wire transfers — such as the Banks failing to close the fraudsters' accounts — and not the wire transfers themselves, Article 4A is not preclusive. (Pl. Resp. to Wells Fargo, Doc. 34 at 9; Pl. Resp. to SunTrust, Doc. 33 at 7.) For this proposition, Zeal relies primarily on *Anderson v. Branch Banking and Trust Company*, 119 F.Supp.3d 1328 (S.D. Fla. 2015). In that case, the plaintiffs alleged that the defendant-bank was negligent in allowing non-authorized individuals to open accounts (by way of forged signatures) and conduct transactions in the plaintiffs' names. *Id.* at 1355. In denying defendant's motion for summary judgment on the negligence claim, the *Anderson* Court explained that the plaintiffs' "accusations with respect to [the bank's] lack of care exceed simple objections to unauthorized fund transfers. Instead, they rely on imprudent handling of the account openings." *Id.* at 1358. As a result, their negligence theory was "not inconsistent with the rights, duties, and obligations under the U.C.C." *Id.*

Here, the crux of Zeal's allegations center upon the fraudulent wire transfers. Undisputedly, any liabilities and duties of the Banks related to the wire transfers are exclusively governed by the language of O.C.G.A. § 11-4A-207(b)(1), which details the commercially proper way to handle a situation involving a name-account number mismatch, as is the case here. Zeal has not alleged that Defendants acted in contravention to the dictates of Article 4A or that they otherwise acted improperly by its standards. The rules and mechanisms governing wire transfers have been carefully crafted, as explained in the Official Comment to Article 4A:

> Funds transfers involve competing interests—those of the banks that provide funds transfer services and the commercial and financial organizations that use the services, as well as the public interest. These competing interests were represented in the drafting process and they were thoroughly considered. The rules that emerged represent a careful and delicate balancing of those interests and are intended to be the exclusive means of determining the rights, duties, and liabilities of the affected parties in any situation covered by particular provisions of the Article.

O.C.G.A. § 11-4A-201, cmt. As a result, to "resort to principles of law or equity outside of Article 4A [would] not [be] appropriate to create rights, duties and liabilities inconsistent with those stated in this Article." *Id*.

Zeal's attempt to escape U.C.C. preemption by arguing that their claims are based on activity before and after the wire transfers is not persuasive. Significantly, as Defendants point out, the damages Zeal asserts arise directly from the wire transfers themselves; without the transfers, there is no harm to Zeal. (Wells Fargo Reply, Doc. 35 at 2.) This case is thus different from *Anderson* because the plaintiffs in that case could allege direct harm flowing from the improper opening of accounts in their names—a situation not directly governed by a U.C.C. provision. Conversely, this case does not involve allegations of improper accounts in Zeal's name or even improper account openings. Zeal's harm completely is dependent upon the Banks' treatment of the wire transfers, which is directly governed by O.C.G.A. § 11-4A-207(b)(1). To impose additional duties on the banks at all related to the wire transfers would be inconsistent with the text of the U.C.C.[4]

---

[4] Indeed, the *Anderson* Court explained that "any negligence theory premised solely on the unauthorized transfers would be displaced by Articles 4 and 4A as the claims fall precisely within

Put simply, Zeal cannot jam square U.C.C. claims into a round common law hole. *See, Ma. v. Merill Lynch, Pierce, Fenner & Smith, Inc*., 597 F.3d 84, 90 (2d. Cir. 2010) ("Article 4A's text strongly suggests that it applies to claims asserting the existence of unauthorized wire transfers ***regardless of what the claims may be called***...") (emphasis added); *Alt. Energy Grp., Ltd. v. Ne. Direct Corp*., 53 F.Supp. 3d 810, 814 (D.S.C. 2014) (finding U.C.C. preemption because the **"essence"** of plaintiff's claims arose out of the bank processing a funds transfer)(emphasis added); *Capten Trading Ltd. v. Banco Santander International*, 2018 WL 1558272, at *3 (S.D. Fla. Mar. 29, 2018) (explaining that plaintiff's **"basic contention"** was that the bank "should have recognized that the incoming wire transfer requests were fraudulent" and thus "[a]t bottom, all of [the plaintiff's] common-law claims rest on [the plaintiff's] allegations that the Bank mishandled unauthorized wire transfer requests")(emphasis added). Under the circumstances and based on overwhelming authority on this question, the Court finds that "at bottom" the "essence" of Zeal's claims, and *all the harm it alleges*, arises out of and flows through the fraudulent wire transfers.

Zeal's second argument against preemption is that the U.C.C. does not preclude common law claims where the bank "knows or should have known that the funds were illegally obtained."  (Pl. Resp. to Wells Fargo at 9; Pl. Resp. to SunTrust at 7.) In support, Zeal relies solely on *Regions Bank v. Provident Bank*,

---

the duty contemplated by the statutory scheme under the aforementioned Articles." *Anderson*, 119 F.Supp.3d at 1357.

Inc., 345 F.3d 1267 (11th Cir. 2003). In *Regions Bank*, the Eleventh Circuit addressed a dispute between two banks related to a wire transfer where the defendant-bank used the funds accepted on behalf of the beneficiary of the wire transfer as a setoff against a debt owed to it by that same beneficiary. *Id.* at 1270. The plaintiff-bank alleged that the defendant bank accepted the funds (ultimately for its own benefit) when it knew or should have known that the funds were fraudulently obtained. *Id.* at 1273.

The *Regions Bank* Court affirmed the district court's grant of summary judgment to the defendant-bank because the plaintiff-bank failed to establish its common law claims of conversion, unjust enrichment, or unlawful setoff (under Ohio law). *Id.* at 1279. However, in so finding, the court also explained that, "Article 4A does not preempt a state law claim if money is transferred by wire to a party that knows or should have known that the funds were illegally obtained." *Id.* at 1275-76 ("Interpreting 4A in a manner that would allow a beneficiary bank to accept funds when it knows or should know that they were fraudulently obtained would allow banks to use Article 4A as a shield for fraudulent activity.").

However, *Regions Bank* involved a situation in which the defendant-bank itself received a payment from the fraud it allegedly knew of (because it used the fraudulent funds to pay a debt owed to it by the beneficiary). That situation is factually distinguishable from here, where Zeal has not alleged that any portion of the wire transfers were directly paid to Wells Fargo or SunTrust but rather that the

Banks indirectly benefitted through the assessment of fees and use of funds in lending practices. (Compl. ¶¶ 41, 48.)

*Regions Bank* also did not directly involve a situation of a name-account number mismatch on a wire transfer,[5] as governed by O.C.G.A. § 11-4A-207(b)(1); as such, a determination that common law claims were not precluded by Article 4A was not plainly inconsistent with the U.C.C. in the manner that it would be here, as described above.

Further, the *Regions Bank* Court determined that the "red flags" the plaintiff identified were "insufficient as a matter of law" to show that the defendant-bank knew or had reason to know that the *wires at issue* were fraudulent. *Regions Bank*, 345 F.3d at 1277-79. (emphasis added). The "red flags" the plaintiff identified were evidence that the defendant-bank was aware that the FBI was investigating the particular beneficiary for fraud, as well as evidence that the defendant-bank had received a phone call regarding the potentially fraudulent nature of the wires at issue, but only after the payment orders were received. *Id.* at 1277.

Thus, showing that a defendant knew or should have known of fraud on a particular wire transfer is a high hurdle, and one Zeal has not cleared here. The "red flags" Zeal identifies, taken as true at this juncture, are insufficient to establish that the Banks knew or should have known of the fraud on the wires at issue under the *Regions Bank* standard. Zeal presents no facts to support that SunTrust or

---

[5] In *Regions Bank*, the plaintiff argued that the payment order also identified that the funds were for specific loans, but as the court explained, "the payment orders accurately identified Morningstar as the holder of the account." 345 F.3d at 1278.

Wells Fargo were at all alerted to fraud on the First or Second Accounts before the respective wire transfers. On the Third Account, while Zeal alleges that a noncustomer notified Wells Fargo that they had been fraudulently instructed to wire business funds to that account, Zeal has not alleged facts to support that Wells Fargo knew or should have known that the *particular March 23* wire transfer at issue in this case was potentially fraudulent or was the product of criminal activity. As noted above, the *Regions Bank* Court found evidence that the defendant-bank knew of an FBI investigation into the beneficiary inadequate to demonstrate that money subsequently paid was obtained by fraud. *Id.* at 1277. As Zeal's allegations do not rise even to the level of those in *Regions Bank*, which were more compelling but nevertheless insufficient as a matter of law, Zeal has not plausibly alleged facts to support this theory for avoiding U.C.C. preemption.

Moreover, as alleged by Zeal, Wells Fargo worked to notify COPA of fraud (Compl. ¶ 29), sent Zeal's bank a request to confirm the legitimacy of the third wire (*id.* ¶ 31), placed a "hard hold" on the third account prior to the recall of the wire (*id.* ¶ 33), and ultimately recovered $179,447.88 of the $293,362.30 in the third wire (*id.* ¶ 34). In light of these important factors in the present case — the absence of a direct transfer of funds to the Banks, the core issue of a name-account mismatch clearly addressed by a specific provision of Article 4A, and the dearth of factual support for allegations that the Banks had reason to know that the specific wires at issue were fraudulent — the cited language of *Regions Bank* cannot overcome the overwhelming authority on this question and cannot sustain

Plaintiff's argument against U.C.C. preemption. The Court finds that the U.C.C. preempts Zeal's claims, which are squarely addressed by Article 4A. Moreover, even absent the issue of U.C.C. preemption, Zeal's claims would otherwise fail, as explained below.

### B.   Failure to State a Claim

#### 1.   Claims Based on Civil Conspiracy

Zeal bases its claims for fraud (Count I), conversion (Count II), and tortious interference with business and contractual relations (Count V) on a theory that the Banks conspired with the fraudsters and are therefore jointly and severally liable for the damages caused by these alleged conspiracies. (Compl. ¶¶ 53, 59, 75.) The Banks argue that Zeal has not plausibly alleged a civil conspiracy, as the Amended Complaint lacks any facts asserting that the Banks and the fraudsters arrived at a mutual understanding to accomplish an unlawful end, let alone *how* they allegedly arrived at such a mutual understanding. (Wells Fargo MTD at 16; SunTrust MTD at 10.) Zeal responds that it is not required to allege an express agreement among conspirators but only that two or more persons "tacitly" came to a mutual understanding of how they would accomplish an unlawful design. (Pl. Resp. to Wells Fargo at 12; Pl. Resp. to SunTrust at 12.)

"To recover damages based on a civil conspiracy, a plaintiff must show that two or more persons *combined* either to do some act which is a tort, or else to do some lawful act by methods which constitute a tort." *Peterson v. Aaron's Inc.*, 108 F.Supp.3d 1352, 1356 (N.D. Ga. 2015) (citing *McIntee v. Deramus*, 722 S.E.2d 377,

379 (Ga. Ct. App. 2012) (emphasis added)).  "A conspiracy exists when two or more persons in any manner, either positively or tacitly, arrive at a mutual understanding as to how they will accomplish an unlawful design." *Bolinger v. First Multiple Listing Serv., Inc.*, 838 F. Supp.2d 1340, 1368 (N.D. Ga. 2012) (Story, J.) (citing *Parrish v. Jackson W. Jones, P.C. et al.,* 629 S.E.2d 468, 472 (Ga. Ct. App. 2006)) (internal citations omitted). "The essential element of conspiracy is the charge of a common design." *Id*. Furthermore, "[t]here can be no conspiracy without a purpose, express or implied, to do something unlawful, oppressive, or immoral . . . ." *R.R.R. Ltd. P'ship v. Investguard, Ltd. et al.,* 463 S.E.2d 735, 736 (Ga. Ct. App. 1995).

The Court finds that Zeal has failed to allege sufficient facts to show a plausible agreement between the fraudsters and the Banks to defraud Zeal, convert its funds via fraudulent wire transfers, or tortiously interfere with its relationship with any other businesses, including COPA. Zeal's allegations that the Banks entered into agreements with the account holders to open accounts (Compl. ¶¶ 40, 47) are not sufficient to support a conspiracy as to any of the alleged tortious conduct. Banks opening accounts with customers is perfectly routine and lawful.

Further, Zeal's conclusory allegations that the Banks "tacitly allowed" the account holders to continue using their accounts to perpetrate tortious acts (Compl. ¶¶ 43, 50, 51) do not sufficiently allege that the Banks and fraudsters came to a *mutual understanding* as to *how* they *combined* to accomplish an unlawful design to defraud Zeal, convert its funds, or interfere with its business

relationships. *Twombly*, 550 U.S. at 546 ("Nothing in the complaint invests either the action or inaction alleged with a plausible conspiracy suggestion."); *Bolinger*, 838 F.Supp.2d at 1368 (finding that plaintiffs had not adequately alleged facts to support civil conspiracy where they had not alleged facts to support agreement between real estate listing service, brokers, and agents to engage in deceptive practices or unjustly enrich listing service) ("Absent an agreement, there can be no conspiracy."); *Wells Fargo Bank v. Crowly*, 2014 WL 11370437, at *8 (N.D. Ga. Feb. 20, 2014) (explaining that "if insufficient factual allegations are made with regard to either (1) the underlying tort or (2) the agreement between conspirators (in furtherance of the tort or unlawful act) constituting the conspiracy," the claims are subject to dismissal); *Bragg v. Bank of Am., N.A.*, No. 1:14-cv-546-WSD, 2014 WL 2154190, at *4 (N.D. Ga. May 21, 2014) (explaining that a plaintiff may not rely on conclusory assertions that two parties engaged in a conspiracy), *appeal dismissed*, 11th Cir. 14-12670 (11th Cir. Nov. 5, 2014); *Kante v. McCurdy Candler LLC*, No. 1:10-CV-1972-JEC-ECS, 2012 WL 13071598, at *10 (N.D. Ga. Jan. 31, 2012), *report and recommendation adopted sub nom. Kante v. McCurdy & Candler, L.L.C.*, No. 1:10-CV-1972-JEC, 2012 WL 13071546 (N.D. Ga. Feb. 16, 2012) (dismissing conspiracy to commit fraud claim because plaintiff pled nothing more than conclusory statements and insufficient factual content in support of his claim).

While Zeal cites *Outside Carpets, Inc. v. Industrial Rug Co.*, 185 S.E.2d 65 (Ga. 1971) for the proposition that "it is not necessary to prove an express

agreement among the conspirators," a plaintiff must still plausibly allege some factual basis to support a mutual understanding and a common design to commit the torts at issue, the crux of a civil conspiracy.[6] Zeal has failed to do so here. Without viably alleging a conspiracy, Zeal cannot impute the fraudsters' conduct to the Banks. *Parrish*, 629 S.E.2d at 472 (finding that defendant was not liable under theory of civil conspiracy because there was no evidence that he knew of alleged co-conspirators' misrepresentations or that he participated in fraudulent scheme, and explaining that "*after* the conspiracy is formed, if a party joins therein, knowing of its existence and purpose," he becomes a party to the conspiracy) (emphasis added).

As to Count I, Zeal has not even propounded conclusory allegations that the Banks themselves engaged in fraud absent the conduct of the fraudsters, let alone allegations that meet the heightened federal pleading requirement. *See*, Fed. R. Civ. P. 9(b) ("In alleging fraud or mistake, a party must state with particularity the circumstances constituting fraud or mistake."). Zeal has not asserted  what specific actions or representations of the Banks support its fraud theory, the time or place of any such conduct, the manner in which the Banks' actions misled Zeal, or any other details regarding the nature of any fraudulent conduct under the heightened federal pleading standard. In briefing, Zeal does not argue that the Banks

---

[6] In *Outside Carpets,* the plaintiff-company argued that its former employee (a defendant) went to work for the defendant-company and they conspired to construct an oven similar to one made by plaintiff, thereby violating trade secret laws. *Id*. at 66. That scenario clearly asserts a factual basis for an agreement and common design, unlike here.

independently engaged in fraud, only that the fraudsters' allegations are attributable to the Banks. (Resp. to SunTrust at 13; Resp. to Wells Fargo at 13.)

Zeal's conversion claim (Count II) similarly hinges on the existence of a civil conspiracy as these allegations all state that the Banks acted "in concert" with the fraudsters. To establish a claim for conversion, a plaintiff must show (1) title to the property; (2) actual possession in the other party; (3) demand for return of the property; and (4) refusal by the other party to return the property." *DDR Corp. v. Worldpay US, Inc.*, 1:16-cv-3580-MHC, 2017 WL 7660397, at *2 (N.D. Ga. Aug. 18, 2017).

Here, "as a matter of law, title to the [wired] funds passed to [the beneficiary] when the funds transfer was completed." *United States v. BCCI Holdings (Luxembourg), S.A.*, 980 F. Supp. 522, 527 (D.D.C. 1997); *Bayerische Hypo-Und Vereinsbank AG v. HSBC Bank USA, N.A.*, 2015 N.Y. Misc. LEXIS 2602, *15 ("[A]t the time the payment orders are accepted, title passes to the recipient of a wire transfer."). As it cannot rely on civil conspiracy to support its claims, Zeal cannot state a claim for conversion because it cannot establish that the Banks had title to the property (Zeal's funds) or actual possession of their funds, since "as a matter of law" the title passed to the fraudsters when the payment order was accepted. *J. Kinson Cook of Ga., Inc. v. Heery/Mitchell*, 644 S.E.2d 440, 447 (Ga. Ct. App.

2007) ("Where there is no evidence that the defendant possesses any of the funds or items allegedly converted, an action for conversion must fail.").[7]

As with its fraud and conversion claims, Zeal's tortious interference claim (Count V) seeks to hold the Banks liable for the conduct of the fraudsters. To state a claim for tortious interference with contractual or business relations, a plaintiff must adequately plead the following elements: (1) improper action or wrongful conduct by the defendant without privilege; (2) that the defendant acted purposely and with malice with intent to injure; (3) that defendant induced a breach of contractual obligations or caused a third party to discontinue a business relationship with plaintiff; and (4) that defendant's tortious conduct proximately caused damage to the plaintiff. *Mabra v. SF, Inc.*, 728 S.E.2d 737, 739-740 (Ga. Ct. App. 2012).

In briefing, Zeal argues that the account holders sent fraudulent emails to Zeal, acted with malice and intent to injure, induced a breach of contractual relations, and that the "account holder's actions are attributable" to the Banks as joint tortfeasors. (Resp. to SunTrust at 22.) Zeal does not argue that the Banks themselves independently engaged in conduct sufficient to establish a tortious interference claim absent the fraudsters, and Zeal has alleged no facts to support such a theory. Therefore, Zeal cannot state a claim for tortious interference against the Banks.

---

[7] In light of the Court's analysis, it need not address Defendants' arguments that Zeal cannot establish a conversion claim based on fungible non-specific money or that Zeal did not demand return of the funds until those funds were already depleted by the fraudsters.

Zeal has failed to state a claim against the Banks for fraud, conversion, or tortious interference because it has predicated those claims upon the existence of a civil conspiracy; however, construing Zeal's allegations as true and in the light most favorable to Plaintiff, Zeal's allegations are nevertheless inadequate to support a civil conspiracy as a matter of law. Consequently, besides being precluded by Article 4A, Counts I, II, and V fail to state a claim for relief.

## 2.    Negligence

Besides arguing that Zeal's negligence claim is displaced by the U.C.C., the Banks assert that they owed no duty to Zeal, that Zeal has not alleged facts to support breach of any imagined duty, and that Zeal has not alleged facts to support proximate cause. (Wells Fargo MTD at 19; SunTrust MTD at 17, 20.) Zeal argues that the Banks have a duty to close accounts where they know the account holder is perpetrating fraud and further contends that the Banks' negligence proximately caused its harm. (Pl. Resp. to Wells Fargo at 17; Pl. Resp. to SunTrust at 17.)

Whether a defendant owes a plaintiff a duty of care is question of law. *Diamond v. Dep't of Transp.*, 756 S.E.2d 277, 281 (Ga. Ct. App. 2014). A legal "duty can arise either from a valid legislative enactment, that is, by statute, or be imposed by a common law principle recognized in the case law." *Id.* Zeal has alleged no duty based on legislative enactment or statute. The Banks have cited an abundance of authority holding that a bank owes no common law duty to noncustomers. *See e.g. Midwest Feeders, Inc. v. Regions Bank (Inc.)*, No. 1:15-cv-00013-LJA, 2016 U.S. Dist. LEXIS 135054, at *15 (M.D. Ga. Sept. 30, 2016) (dismissing negligence claims

for failure to state a claim because bank owes no duty to defrauded noncustomer); *Eisenberg v. Wachovia Bank, N.A.*, 301 F.3d 220, 225 (4th Cir. 2012); *Nat'l Union Fire Ins. Co. of Pittsburg, PA v. Raczkowski*, 764 F.3d 800, 805-06 (8th Cir. 2014); *VIP Mortg. Corp. v. Bank of Am., N.A.*, 769 F. Supp. 2d 20, 27 (D. Mass. 2011) (reiterating "the now almost universal rule that banks do not owe a common law duty of care to third party noncustomers").

Zeal cites no authority holding that a bank owes a duty of care to noncustomers and its attempts to distinguish the authority provided by Defendants are unpersuasive.[8] Consequently, Zeal has not alleged that the Banks owed it a legally cognizable duty of care and therefore cannot maintain a claim for negligence, even absent U.C.C. preemption.[9]

### 3.   Money Had and Received

To support a claim for money had and received, a plaintiff must show that (1) a party has received money justly belonging to the plaintiff and (2) that the plaintiff has made a demand for repayment which was refused. *Hill for Credit National Capital LLC v. Sucio*, 292 F. Supp. 3d 1370, 1379 (N.D. Ga. Feb. 20, 2018)

---

[8] Neither of the courts in *Parrish v. Chase Bankcard Servs.*, 2014 U.S. Dist. LEXIS 191038 (N.D. Ga. June 10, 2014), *report and recommendation adopted by* 2014 U.S. Dist. LEXIS 191037 (N.D. Ga. July 17, 2014) or *Nicholls v. NationsBank of Georgia N.A.*, 488 S.E.2d 751 (Ga. Ct. App. 1997), decided the issue of whether a bank owes a duty to a noncustomer. Moreover, in both cases, the plaintiffs brought negligence claims against the banks for allowing individuals to open accounts in their names. This case does not involve any allegations about improper account openings in Plaintiff's name.

[9] Because the Court finds that Zeal alleges no cognizable duty, it need not address whether Zeal has adequately alleged proximate cause.

("Thus, recovery is authorized against one who holds the money of another which he ought in equity and good conscience to refund.") (internal citations omitted).

Defendants argue that Count IV fails because, in addition to U.C.C. preemption, Zeal has not alleged facts to show that the Banks received money belonging to Zeal, that Zeal made a timely demand for repayment that was refused, or that equity requires them to compensate Zeal. (Wells Fargo MTD at 22-23; SunTrust MTD at 21-22.) Zeal alleges that the Banks received the money "of Zeal Global." (Compl. ¶ 71.) But as noted *supra*, "as a matter of law, title to the [wired] funds passed to [the beneficiary] when the funds transfer was completed." *BCCI Holdings (Luxembourg), S.A.*, 980 F. Supp. at 527; *Bayerische Hypo-Und Vereinsbank AG*, 2015 N.Y. Misc. LEXIS 2602, *15 ("[A]t the time the payment orders are accepted, title passes to the recipient of a wire transfer."). Applied here, title to the funds passed to the account holders (not the Banks) at the time the payment orders were accepted, foreclosing any argument that the Banks received money justly belonging to Zeal.[10]

Further, Zeal cites no relevant legal authority to support its argument that equity requires the Banks to compensate it under comparable circumstances. Moreover, any such equitable remedies related to the return of funds for an alleged improper wire transfer would conflict with the carefully developed rules, set out in

---

[10] Zeal has alleged that the Banks conferred benefit from the fraudsters' use of their accounts and the assessment of fees, the use of funds in lending practices, and a contribution to the stability of the institution. (Compl. ¶¶ 41, 48.) But, as argued by the Banks, these alleged benefits were conferred by the account holders, not Zeal.

Article 4A, regarding who pays in the event of an erroneous wire transfer situation. *Grain Traders, Inc.*, 160 F.3d at 104 ("because there is no theory of liability to support Grain Trader's common law claims for conversion and money had and received that would be consistent with the rights and liabilities created by Article 4-A, we affirm...") Thus, in addition to being preempted by the U.C.C., Zeal's money had and received claim otherwise fails pursuant to Fed. R. Civ. P. 12b(6).[11]

## IV.  Conclusion

The Court is sympathetic to Zeal's plight and the significant financial losses Zeal has suffered. However, the crux of Zeal's claims, and all of its damages, surround fraudulent wire transfers. The drafters of the U.C.C. have carefully crafted rules and standards governing commercial wire transfers. As such, Zeal's claims fall within the purview of Article 4A and are therefore preempted. Furthermore, taking Zeal's allegations as true as required at this stage, Zeal otherwise fails to state a claim for relief, even absent preemption. Accordingly, Defendants SunTrust and Wells Fargo's Motions to Dismiss [Docs. 27, 29] are **GRANTED** and Zeal's Amended Complaint [Doc. 23] is **DISMISSED WITH PREJUDICE**.[12]

---

[11] Zeal's claims for Punitive Damages (Count VI) and Attorney's Fees (Count VII) are derivative of its substantive claims. As Zeal cannot maintain a substantive claim, it cannot maintain its dependent claims. *J. Andrew Lunsford Properties, LLC v. Davis*, 572 S.E.2d 682, 685 (Ga. Ct. App. 2002).

[12] As Zeal fails to state viable claims, the Court need not address the Banks' argument that Zeal cannot maintain an action because it is not authorized to transact business in Georgia.

**IT IS SO ORDERED** this 18th day of December, 2020.

**Honorable Amy Totenberg**
**United States District Judge**